The bill alleges that at a sale of the land of the heirs at law of one John F. Smith, made by the clerk and master in equity for Craven, the defendant James Shakleford purchased a part of the land, at the price of $2,975, for which he gave his note to the clerk and master, Edward Graham, with the plaintiff and one John Shakleford as sureties. The sale was confirmed, and an order made that the clerk and master collect the sale notes and pay over the amount to Ann Smith. The clerk and master, instead of collecting the note, assigned it to Ann Smith, and made a deed to Shakleford. Afterwards Shakleford made a payment on the note of $1,014.33, by a sale of three slaves to Ann Smith, and judgment was taken at November Term, 1842, of Craven County Court, in the name of Ann Smith against Shakleford and the plaintiff, for the balance due upon the note. John Shakleford, being insolvent, was not sued.
Soon after the rendition of the judgment the plaintiff applied to the clerk of the county court and obtained an execution, which he delivered *Page 258 
to the sheriff of the said county and caused to be levied upon several slaves as the property of Shakleford, which slaves were the property (370) of the said Shakleford and liable to execution, notwithstanding a pretended deed of marriage settlement made by Shakleford and wife to Ann Smith, before their intermarriage, the deed not having been proven as required by law. Ann Smith thereupon took the execution out of the hands of the sheriff, returned it to the clerk's office, discharged the levy, and directed that no execution should issue without her order.
The slaves were sold under other executions levied at the same time, and James Shakleford had no other property out of which the debt could be made. The plaintiff avers that the value of the slaves so levied on was more than sufficient to have paid off the judgment, and insists that Ann Smith ought not in equity now to collect it out of him.
The bill alleges, as another ground of relief, that the negroes conveyed by James Shakleford to Ann Smith, as a part payment of the debt, and the judgment for the balance, are held by Ann Smith in lieu and as a substitution for real estate of the other defendant, Laura, the wife of James Shakleford, in which real estate Shakleford was entitled to a life estate as husband, he having children by the said Laura; and avers that Shakleford is thus entitled for his lifetime to the profits of the slaves, and the interest upon the balance of the debt secured by the judgment, and insists that the plaintiff has a right to such profits and interest applied towards the satisfaction of the judgment.
The prayer is that the defendant Ann Smith be enjoined from the collection of the whole judgment upon the first ground, and, if that is not sustained, then for a proper credit upon the judgment for an amount equal to the value of the life estate of Shakleford.
The answers admit the facts alleged, except the allegation that the slaves had been levied upon before the execution was called in by Ann Smith. And she insists that she had a right to call in the execution, (371) because the plaintiff had improperly procured it to be issued without her consent. She alleges that the deed of marriage settlement made by Shakleford and wife to her before their marriage was proven before the clerk of the county court and had been registered, and that she held the negroes in her possession as trustee for Mrs. Shakleford, and that she was not bound to allow an execution in her name to be issued and levied upon negroes which she held in her possession and claimed as trustee.
She alleges, further, that after the execution had been called in, she gave the plaintiff notice in writing that if he would pay her the amount of the judgment he might take the control of it, and she would assign it to some third person for his benefit, which he declined doing. As to the *Page 259 
second ground taken in the bill, she alleges that only one-third of the debt for which the plaintiff was bound as the surety of Shakleford belonged to Mrs. Shakleford, as the other two-thirds were received by her as the trustee of Mrs. Vanbocklin and as the guardian of Julia Smith; so that, if the deed of marriage settlement was void as to the creditors, Shakleford was only entitled to a life estate in one-third of the fund; and his interest had been transferred to the assignees in bankruptcy under a proceeding by which he was declared a bankrupt, before the filing of the plaintiffs' bill.
It is unnecessary to decide whether the negroes had been levied on or not, for we think, as the execution issued without her consent, Ann Smith had a right to call it in and discharge the levy, if it had been made. She was under no obligation to allow an execution to be taken out in her name for the purpose of selling negroes held by her as trustee. Indeed, she could not do so in good faith to (372) Mrs. Shakleford, the cestui que trust. All that the plaintiff, as surety, had a right to ask under the circumstances was the benefit of having the control of the judgment, provided he paid up the debt, and this he failed to do.
The plaintiff has not made a case coming within the well settled principle that a surety is entitled to the benefit of all the securities for the debt which the creditor obtains; and if the creditor releases any such security, the surety is discharged in equity to the extent of the security so released.
Upon the other ground, it is clear that Shakleford is entitled to a life estate in the fund; the plaintiff, as surety, is entitled to have the benefit of it.
The proceedings in bankruptcy did not transfer the life estate of Shakleford to the assignee for the benefit of his creditors; for, as to his life estate in the $1,014.33, that being in the hands of Ann Smith, she was entitled to it as security for the balance of the debt, and the plaintiff, as surety, if he pays the said balance, becomes thereby entitled to the security. And, as to the life estate to which Shakleford will be entitled in the balance of the debt when paid, the surety, who pays the debt, is entitled to it.
There must be a reference to the clerk to inquire whether the whole sum for which the plaintiff was the surety of Shakleford, or one-third, or any part thereof, belonged to Shakleford and wife as the proceeds of the sale of Mrs. Shakleford's real estate.
PER CURIAM. Ordered accordingly.
Cited: Hamilton v. Mooney, 84 N.C. 15; Bank v. Homesley, 99 N.C. 533. *Page 260 
(373)